NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY


RAMONITA GONZALEZ,                    :

            Plaintiff,                :

      v.                              :
                                          Civil Action No. 04-3001(JWB)
                                      :
PASSAIC COUNTY PROBATION,                      **O P I N I O N**
MIKE COSTABILE,                       :
DOROTHY HOWELL, CAROL KOPACZ,
JOHN KRIEGER, MARY STATELY,           :
PROBATION ASSOCIATION
OF NEW JERSEY,                        :
PETER TORTORETO and
GEORGE CHRISTIE,                      :

            Defendants.               :


**APPEARANCES**:

      RAMONITA GONZALEZ, pro se
      47 Sandy Court
      Paterson, New Jersey  07522

      PETER C. HARVEY
      Attorney General of New Jersey
      By:  Matthew Sapienza
          Deputy Attorney General
      Hughes Justice Complex
      P.O. Box 112
      Trenton, New Jersey  08625-112
      (Attorneys for Defendants
      The Superior Court of New Jersey,
      Passaic Vicinage, Probation Division
      (improperly pleaded as Passaic County
      Probation); Michael J. Costabile,
      Dorothy Howell, Carol Kopacz,
      John V. Krieger and Mary Stately)

```
FOX and FOX
By:  Benjamin Benson, Esquire
70 South Orange Avenue
Livingston, New Jersey  07039
(Attorneys for Defendants
Probation Association of New Jersey,
George P. Christie and Peter tortoreto)
```

**BISSELL**, <u>Chief Judge</u>

This matter comes before the Court on an application by the Plaintiff for the appointment of pro bono counsel pursuant to 28 U.S.C. § 1915.  This Court has jurisdiction pursuant to 42 U.S.C. 2000e-5.

<u>**PROCEDURAL HISTORY**</u>

Plaintiff Ramonita Gonzalez ("Plaintiff") is a pro se plaintiff who filed the instant Complaint on June 25, 2004 against the Passaic County Probation, Mike Costabile, Dorothy Howell, Carol Kopacz, John Krieger, Mary Stately, the Probation Association of New Jersey, Peter Tortoreto and George Christie. The Complaint alleges employment discrimination pursuant to Title VII of the Civil Rights Act of 1964.  <u>See</u> Compl. at ¶ 1.

On November 9, 2004, Plaintiff filed an application for pro bono counsel.  Thereafter, on January 24, 2005, the Probation Association of New Jersey, George P. Christie and Peter Tortoreto filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The remaining Defendants filed an Answer on March 21, 2005.

<u>**FACTS**</u>

Plaintiff was employed as a Probation Officer in the Child

Support Unit of the Passaic Vicinage . <u>See</u> Pl.'s Ex. E at E-3.
On March 31, 2003, the Passaic Vicinage issued a Preliminary
Notice of Disciplinary Action to the Plaintiff alleging conduct
unbecoming a public employee and other sufficient cause in
violation of N.J.A.C. 4A:2-2.3(a)(6),(11).   <u>Id.</u> at E-2.   This
disciplinary action stemmed from allegations that the Plaintiff
"inappropriately involved herself in her child support case
thereby engaging in conduct unbecoming a pubic employee and
violating the Code of Conduct." <u>Id.</u> at E-3.   According to the
Recommended Decision of Hearing Officer Nancy M. Mahony, Esq.,
("Hearing Officer Mahony") Plaintiff was transferred to the
Passaic Vicinage Child Support Unit in July of 2002.   <u>See</u> <u>id.</u> at
E-4.   At that time, the Plaintiff was told that her own personal
child support case against Mr. Curvey Thompson ("Mr. Thompson")
should be transferred to Bergen County to avoid any conflict
while she worked in the Passaic Vicinage of the Child Support
Unit. <u>See</u> <u>id.</u>   This transfer, however, did not occur until
November of 2002.[1]   <u>See</u> <u>id.</u>

     Prior to the transfer, Carolyn Gibbons ("Ms. Gibbons") was
assigned as an Investigator to the Plaintiff's case.   <u>See</u> <u>id.</u>   In
November 2002, a fax was sent from the Passaic Child Support Unit
under the name of Ms. Gibbons but in the Plaintiff's handwriting.

---

     [1]   There was a transfer order dated May 10, 2002, but that
order was not put into effect until November of 2002.   <u>See</u> Pl.'s
Ex. E at E-4.

See id.  This fax was sent to Mr. Thompson's employer to enforce a wage garnishment in the Plaintiff's child support case.  See id.

Hearing Officer Mahony found that "on November 12, 2002, Ms. Gonzalez faxed the wage garnishment to the payroll department at [Mr. Thompson's employer] with Ms. Gibbons' knowledge and permission."  Pl.'s Ex. E at E-10.  Yet, Hearing Officer Mahony also concluded that Plaintiff's "actions were conduct unbecoming a public employee and exhibited actual or apparent impropriety." Id. at E-12.[2]  As a result, Hearing Officer Mahony recommended that the Plaintiff receive a six month suspension rather than termination.  See id. at E-13.

Plaintiff alleges that after filing her appeal but prior to the Recommended Decision of Hearing Officer Mahony, she "was subjected to on-going acts of harassment which created a hostile work environment."  N.J. Charge of Discrimination, attached to Compl.  Further, Plaintiff charges that her "duties were reduced and/or changed.  I was issued write-ups for lateness." Id. Plaintiff alleges that non-Hispanic, male workers who also violated state codes were "issued less discipline." Id. Plaintiff stated: "I believe that I have been discriminated against because of my sex (Female), national origin (Hispanic)

---

[2]  The Court notes that one page of the Recommended Decision of Hearing Officer Nancy M. Mahony, Esq. is missing from Exhibit E, as the Exhibit skips from page E-10 to page E-12.

-4-

and retaliation in violation of Title VII of the Civil Rights Act of 1965, as amended." Id.

Plaintiff specifically charges that the Probation Association of New Jersey did not provide fair representation. See Compl., Attach. at 1. According to Plaintiff, because the Probation Association of New Jersey decided not to represent her, she was forced to hire her own private attorney to represent her during her appeal and hearing. See id. She further charges that Defendants George P. Christie and Peter Tortoreto informed her "that I should resign with good standing because I had no chance of saving my employment." Id. Plaintiff also claims that she has been assigned "an all-Spanish caseload" in spite of the fact that her supervisor is aware that while she is of Hispanic origin, her "first and only language is English." Pl.'s Feb. 16, 2005 Letter at ¶ 4. For these reasons, Plaintiff filed the instant action in this Court.

While Plaintiff secured the services of an attorney for her disciplinary hearing and subsequent internal appeal, she now claims that she can no longer afford or secure the services of an attorney. See Pl.'s Appl. For Pro Bono Counsel, ¶ 3. According to Plaintiff, she cannot afford an attorney to represent her in the instant action. See id. Therefore, Plaintiff filed the instant application for the appointment of pro bono counsel. The Court will now address that application.

-5-

**DISCUSSION**

I.   **Standard for the Appointment of Pro Bono Counsel to an Indigent Civil Litigant**

An indigent civil litigant does not possess either a constitutional or a statutory right to appointed counsel. See, e.g., Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997); Montgomery v. Pinchak, 294 F.3d 492, 498-499 (3d Cir. 2002). Nevertheless, district courts have been granted statutory authority to request appointed counsel for indigent civil litigants.  See 28 U.S.C. § 1915(e)(1) (providing that "[t]he court may request an attorney to represent any person unable to afford counsel").  The Court of Appeals for the Third Circuit has interpreted § 1915 as affording district courts "broad discretion" to determine whether the appointment of counsel in a civil case would be appropriate.  See Tabron v. Grace, 6 F.3d 147, 153 (3d Cir. 1993).  Moreover, the decision to appoint counsel may be made at any point in the litigation, and may be made by a district court sua sponte.  See id. at 156.

While this Court has broad discretion in determining whether to appoint counsel in a civil case, the Third Circuit has developed a list of criteria to aid a district court when weighing the appointment of counsel for indigent civil litigants.[3] See id.  "As a threshold matter, a district court

_____

[3]   In Tabron, the Third Circuit rejected the rule of other circuits that held that the appointment of counsel under §

-6-

must assess whether the claimant's case has some arguable merit in fact and law." Montgomery, 294 F.3d at 498-499 (citing Tabron, 6 F.3d at 155 and Parham, 126 F.3d at 457).

The Third Circuit identified a number of factors that a district court should consider when assessing a claimant's request for counsel where the claimant has overcome the threshold hurdle. See Montgomery, 294 F.3d at 499. These factors include: (1) the plaintiff's ability to present his or her own case; (2) the difficulty of the particular legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue investigation; (4) the plaintiff's capacity to retain counsel on his or her own behalf; (5) the extent to which a case is likely to turn on credibility determinations; and (6) whether the case will require testimony from expert witnesses. See, e.g., Montgomery, 294 F.3d at 499; Tabron, 6 F.3d at 155-57. "This list of factors is not exhaustive, but should serve as a guidepost for the district courts." Parham, 126 F.3d at 457 (citing Tabron, 6 F.3d at 155). Furthermore, the Third Circuit has cautioned that district courts "should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on

---

1915(e)(1) is justified only under "exceptional circumstances." See Tabron, 6 F.3d at 155 (stating that "[n]othing in [the] clear language" of the statute, "[nor] in the legislative history ... [,] suggests that appointment is permissible only in some limited set of circumstances").

frivolous cases." <u>Montgomery</u>, 294 F.3d at 499.

## II. <u>Analysis of the Relevant Factors as Applied to the Facts of this Case</u>

Before this Court may exercise its discretion in favor of appointment, "it must first appear that the claim has some merit in fact and law." <u>Tabron</u>, 6 F.3d at 155 (quoting <u>Maclin v. Freake,</u> 650 F.2d 885, 887 (7th Cir. 1981) (per curiam)).  Hence, this Court must address whether Plaintiff's claim has some merit in fact and law pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII").

### A.   <u>The Elements of a Prima Facie Case Under Title VII</u>

Title VII provides, in relevant part, that it "shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin...."  42 U.S.C. § 2000e-2(a).

It is well established that Title VII claims are to be evaluated according to the burden-shifting framework established by the Supreme Court in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) and then elaborated in <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 n.6 (1981).  As described by the Court in <u>Burdine</u>:

First, the plaintiff has the burden of proving

by a preponderance of the evidence a prima facie case of discrimination.  Second, if the plaintiff succeeds in proving a prima facie case, the burden [of production] shifts to the defendant to articulate some legitimate, non-discriminatory reason for the [adverse employment decision].  Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that legitimate reasons offered by the defendant were not his true reasons, but were a pretext for discrimination.

Burdine, 450 U.S. at 252-53.  It is worth accenting that although the burden of production may shift under the McDonnell Douglas analysis, the Title VII plaintiff always bears the ultimate burden of persuasion establishing intentional discrimination.  See United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716 (1983); Burdine, 450 U.S. at 256.

The precise elements of a prima facie case under Title VII may vary according to the particular facts of the case.  See McDonnell Douglas, 411 U.S. at 802 ("The facts necessarily will vary in Title VII cases, and the specification above of the prima facie case required from [plaintiff] is not necessarily applicable in every respect to differing factual situations.").  However, a Title VII plaintiff may establish generally a prima facie case of employment discrimination by showing that: (1) she is a member of a protected class, (2) she was qualified for a position, and (3) she suffered an adverse employment decision (termination, constructive discharge, failure to receive

promotion, etc.) "under circumstances that give rise to an inference of unlawful discrimination."  <u>Burdine</u>, 450 U.S. at 253.[4]

Should the employee establish a prima facie case, the burden of production shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment decision. "An employer need not prove, however, that the proffered reasons actually motivated the [adverse employment] decision." <u>Stanziale</u>, 200 F.3d at 105; <u>see</u> <u>Fuentes v. Perskie</u>, 32 F.3d 759, 763 (3d Cir. 1994).  Finally, if the defendant successfully articulates a non-discriminatory reason, the burden of production returns to the plaintiff to prove that the proffered reasons were merely pretexts to discriminate.

**B.    The Merits of Plaintiff's Title VII Claims**

In this case, the Plaintiff has submitted no direct evidence of racial, national origin or gender discrimination, and therefore, she must proceed according to the <u>McDonnell Douglas</u>

---

[4] The requirement of a fourth element to establish a prima facie case under Title VII, namely that a member outside of the protected class was hired, appointed, or otherwise benefitted where the plaintiff did not, is no longer applicable in the Third Circuit.  <u>See</u> <u>Pivirotto v. Innovative Systems, Inc.</u>, 191 F.3d 344, 352-57 (3d Cir. 1999) (stating that a plaintiff's "inability to prove that she was not replaced by someone outside of her class is not necessarily inconsistent with her demonstrating that the employer treated her less favorably than others because of [her] race, color, religion, sex, or national origin").  However, even though a Title VII plaintiff need not establish that she was replaced by a non-protected class member, she still needs to raise an inference of intentional discrimination.  <u>See</u> <u>id.</u>

burden-shifting scheme.  The prima facie case under the <u>McDonnell Douglas</u> pretext framework is not intended to be onerous.  <u>See Burdine</u>, 450 U.S. at 253.

It is undisputed that Plaintiff, as an Hispanic female, is a member of a protected class.  Furthermore, Plaintiff has provided adequate documentation supporting the fact that she was qualified for her position, including numerous "Employee Performance Appraisal" forms indicating her abilities as average if not slightly above average.  <u>See</u> Pl.'s Ex. L.  Therefore, there is adequate evidence to show that there is some merit in law or fact as to the second prong of the prima facie case.[5]

Lastly, Plaintiff has also provided evidence that she suffered an adverse employment decision.  Plaintiff submitted to the Court a document showing that her supervisor specifically reduced her responsibilities.  <u>See</u> Pl.'s Ex. K at 1.  Furthermore, Plaintiff has presented evidence of discipline

---

[5]   <u>See</u> <u>Kennedy v. Chubb Group of Ins. Cos.</u>, 60 F. Supp. 2d 384 (D.N.J. 1999) ("The qualification element is part of the plaintiff's prima facie case in order to dispel any question as to the plaintiff's objective qualifications to perform the job he or she sought. In other words, in determining whether plaintiff has demonstrated that she was 'qualified' for the position, the district court must consider whether the plaintiff has the objective experience and education necessary to qualify as a viable candidate for employment.").  It seems, therefore, that the "qualified" prong of the prima facie case is more of a screening mechanism i.e., to weed out clear cut cases such as jobs requiring certain levels of educational degrees, licenses, etc., and any on the job performance-based evaluations are more appropriately considered in the pretext phase of the case.

brought against her resulting in a sixth-month suspension from work.  See Pl.'s Ex. E.  Notably, Plaintiff claims that she has been assigned "an all-Spanish caseload" in spite of the fact that while she is of Hispanic origin, her "first and only language is English."  Pl.'s Feb. 16, 2005 Letter at ¶ 4.  Plaintiff further states the she has advised her supervisor "on several occasions" that she is "not a bilingual worker."  Id.  These actions lend support to the conclusion that there is some merit in law or fact as to the third prong of the prima facie case under Title VII.

Hence, pursuant to the Tabron test, this Court finds that there does appear that Plaintiff's claim has some merit in fact and law. See Tabron, 6 F.3d at 155.  Therefore, the Plaintiff has overcome the required Tabron threshold hurdle, and this Court will proceed to analyze in terms of the relevant factors set forth by the Third Circuit in Tabron.

**C.   The Six *Tabron* Factors**

**1.   The Plaintiff's Ability to Present Her Own Case**

According to the Third Circuit, "the most significant of Tabron's post-threshold factors is the plaintiff's ability to present his or her case." Montgomery, 294 F.3d at 501.  Further, the Third Circuit has identified numerous points that courts should consider in determining a plaintiff's ability to present her own case, including: "the plaintiff's education, literacy, prior work experience, and prior litigation experience, along

with a plaintiff's ability to understand English ...[and] the restraints placed upon [a prisoner plaintiff] by confinement." Id. Moreover, while these factors are not always determinative, they "should be considered in each meritorious case". Parham, 126 F.3d at 459.

In this case, Plaintiff is literate, and, as she stated, her "first and only language is English." Pl.'s Feb. 16, 2005 Letter at ¶ 4. Plaintiff's level of education is not clear from the papers submitted to the Court. Based on the submissions to the Court, it is clear that Plaintiff has been employed as a Probation Officer for at least two years. See Pl.'s Ex. E. Furthermore, according to one of Plaintiff's "Employee Performance Appraisal" forms, she is "computer literate and has a strong knowledge of computer fundamentals, as well as, word processing skills." See Pl.'s Ex. L, Evaluation by Sheila Smith, at 13. Plaintiff's capabilities in this area have also been demonstrated through her numerous writings to this Court and to her adversaries. Plaintiff has filed and responded to motions, indicating her basic capabilities and literacy. See Montgomery, 294 F.3d at 501 ("[T]his Court has determined that the ability to file and respond to motions does indicate that a plaintiff has some legal knowledge and is literate."). It should be noted, however, that "this fact alone does not conclusively establish that [a Plaintiff] was able to present his own case." Parham, 126

F.3d at 459 (finding that a prisoner's lack of legal experience and the complex discovery rules prevented him from presenting an effective case).

While the Plaintiff is literate, there is no evidence that she is capable of handling the complexities of a Title VII suit. This Court does not have any evidence of Plaintiff's ability to maneuver through the procedural rules and requirements.  In fact, in Defendants' Probation Association of New Jersey, George P. Christie and Peter Tortoreto's motion to dismiss, they state that Plaintiff's submissions are "entirely and completely procedurally defective and invalid."  Defs.' Reply at 1.  They further state that Plaintiff's Complaint was "handwritten, factually deficient and poorly pled."  Defs.' Br. at 1.

It is clear that while Plaintiff is literate and capable of corresponding with the Court, she is unable to follow the required procedural and legal requirements called for in a complex Title VII suit.  For that reason, Plaintiff lacks the ability to adequately present her own case.

## 2.   The Difficulty of the Particular Legal Issues

In analyzing the complexity of the legal issues for purposes of appointing counsel, "courts must still look to the proof going towards the ultimate issue and the discovery issues involved." Parham, 126 F.3d at 459.  As discussed previously, a Title VII claim involves shifting burdens that may become complex.  In

cases such as this, it has been held that this shifting burden is a complex legal issue that would be difficult for a pro se plaintiff to maneuver.  See, e.g., Antonmarchi v. Con Edison, 2005 WL 914382 (S.D.N.Y. 2005) (stating that where the action involves allegations of unlawful discrimination and retaliation, such actions present complex legal issues involving shifting burdens of persuasion which will necessarily have to be addressed at a trial); Mejia v. Stonecrest Management, Inc., 2004 WL 1077931 (S.D.N.Y. 2004) ("Furthermore, inasmuch as this is an action in which the plaintiff alleges that he was a victim of unlawful discrimination, complex legal issues involving shifting burdens of persuasion will necessarily have to be addressed and the record before the Court does not indicate that [the plaintiff] possesses any particular knowledge or skill that would enable him to analyze these issues and be prepared to meet the burdens placed upon a plaintiff in an action based upon allegations of unlawful discrimination.").  Moreover, where the record does not indicate that the plaintiff "possesses any particular knowledge or skill that would enable him to analyze these issues and be prepared to meet the burdens placed upon a plaintiff in an action based upon allegations of unlawful discrimination and retaliation" appointment of counsel is appropriate.  See Antonmarchi v. Con Edison, 2005 WL 914382 (S.D.N.Y. 2005).  Hence, this case presents complex legal issues

-15-

and the Plaintiff has not indicated that she possesses any particular knowledge or skill that would enable her to analyze these issues and be prepared to meet the burdens placed upon her.

It is also noteworthy that there are some potential legal issues that Plaintiff may not have pleaded.  Plaintiff submitted evidence of injury while on the job, but does not address this in her Complaint or correspondence with the Court.  <u>See</u> Pl.'s Ex. J (accident report and photographs).  This would seem to support the claim that Plaintiff is not fully capable of representing herself and presenting all relevant legal issues.

> **3.   <u>The Degree to Which Factual Investigation Will Be Necessary and the Ability of the Plaintiff to Pursue Investigation</u>**

The Third Circuit has stated that, where a person is confined to prison and the circumstances of that confinement limit his or her ability to conduct discovery, these facts lend great weight to the decision to appoint pro bono counsel.  <u>See, e.g.</u>, <u>Montgomery</u>, 294 F.3d at 503; <u>Tabron</u>, 6 F.3d at 156.  In this case, Plaintiff is not imprisoned or confined in any way. Hence, there is no evidence that Plaintiff is unable to pursue necessary factual investigation.  However, it should be noted that there does not seem to be an overwhelming amount of necessary factual discovery. Plaintiff was a party to the alleged actions from which her claims stem and for that reason she has first-hand knowledge of those events.  Therefore, factual

discovery does not seem to be an overwhelming burden on the
Plaintiff.

### 4. **The Plaintiff's Capacity to Retain Counsel on Her Own Behalf**

In this case, Plaintiff was able to secure the services of
an attorney for her disciplinary hearing.  However, according to
Plaintiff, that attorney does not practice in federal court.  <u>See</u>
Pl.'s Appl. For Pro Bono Counsel, ¶ 3.  She also hired a second
attorney to represent her during her appeal within the Probation
Department.  <u>See</u> <u>id.</u>  However, Plaintiff states: "I have spent
all of my savings on my first attorney and now on this second
attorney who has my merit case appeal.  I have no more money to
spend on an attorney.  I am a single parent of two medically
need[y] children."  <u>Id.</u>  Plaintiff also states that she went to
several attorneys who refused to represent her because of an
alleged conflict of interest.  <u>See</u> <u>id.</u>

Under similar circumstances, at least one court has granted
pro bono counsel where the plaintiff was once able to secure
counsel but was not economically able to continue that
representation.  See <u>Mejia v. Stonecrest Management, Inc.</u>, 2004
WL 1077931 (S.D.N.Y. 2004) (stating that the record indicated
that the plaintiff "once was able to secure the services of an
attorney," but that now "he has advised the Court that he is no
longer economically able to do so", and holding "that appointment
of counsel, in the circumstances of this case, would be

-17-

reasonable and appropriate" and "would more likely lead to a just determination of the discrimination claim that he has made.").

This Court agrees with the Southern District of New York that under the present circumstances the appointment of counsel would more likely lead to a just determination of Plaintiff's discrimination claim.

### 5. The Extent to Which a Case Is Likely to Turn on Credibility Determinations

When considering this factor, "courts should determine whether the case was solely a swearing contest." Parham, 126 F.3d at 460. This case already has some indications of a swearing contest. Plaintiff argues that some of her behavior, particularly with respect to the fax sent to Mr. Thompson's employer to garnish his wages, was at the direction of her supervisor, Ms. Gibbons. Whereas, according to Hearing Officer Mahony, Ms. Gibbons argued that she did not give the Plaintiff permission to send the fax. See Pl.'s Ex. E at E-10. Hence, a swearing contest has already begun. Therefore, this factor weighs in favor of granting Plaintiff's motion for appointment of pro bono counsel.

### 6. Whether the Case Will Require Testimony from Expert Witnesses

There is no evidence that this case will require testimony from expert witnesses. Therefore, this factor alone does not weigh in Plaintiff's favor.

**D.    Plaintiff is Entitled to the Appointment of Pro Bono
       Counsel**

The circumstances of this case indicate that four of the six
Tabron factors weigh in favor of the appointment of pro bono
counsel.  The Third Circuit has instructed that "where a
plaintiff's case appears to have merit and most of the
aforementioned [Tabron] factors have been met, courts should make
every attempt to obtain counsel."  Parham, 126 F at 461.  In this
case, Plaintiff's claim appears to have merit and she has met
most of the Tabron factors weighing in favor of appointment.
Hence, based on the foregoing analysis, the Plaintiff is entitled
to the appointment of pro bono counsel.

**IV.  Defendants' Motions**

Also before this Court are Defendants Probation Association
of New Jersey, George P. Christie and Peter Tortoreto's
("Defendants") motions to dismiss with prejudice  pursuant to
Fed. R. Civ. P. 12(b)(6).

**A.    Standard**

It is recognized that pro se submissions "must be held to
'less stringent standards than formal pleadings drafted by
lawyers.'"  Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g
denied, 429 U.S. 1066 (1977)(quoting Conley v. Gibson, 355 U.S.
41, 45-46 (1957)); see also Haines v. Kerner, 404 U.S. 519, 520,
reh'g  denied, 405 U.S. 948 (1972); Lewis v. Attorney Gen. of
United States, 878 F.2d 714, 722 (3d Cir. 1989).  When reviewing

a pro se complaint, a court must assume that the plaintiff's factual allegations are true and construe his/her claim liberally.  See, e.g., Neitzke, 490 U.S. at 330 n.9; Haines, 404 U.S. at 520; Roman, 904 F.2d at 197.

## B.   Defendants' Motion to Dismiss

The motion to dismiss in this case is based solely on the fact that the pro se Plaintiff's Complaint was "handwritten, factually deficient and poorly pled."  Defs.' Br. at 1.  The Defendants however, do not acknowledge that this Complaint was a standard form for pro se Plaintiffs to fill out (presumably by hand).  Moreover, in Defendants' Reply, they state: "Despite the fact that she Plaintiff [sic] is representing herself in this matter pro se, the Court should nevertheless not consider Plaintiff's alleged opposition to Defendants' motion because it is entirely and completely procedurally defective and invalid." Defs.' Reply at 1.  Defendants then proceed to cite the Local Civil Rule requiring a brief and state that Plaintiff's opposition "consists of several incoherent and self-serving letters from herself to the Court."  Id.  The crux of Defendants' arguments in favor of dismissal is that Plaintiff's Complaint and further court submissions are procedurally invalid and incomplete.

The Court dismisses Defendants' motions without prejudice. Pro bono counsel will be appointed pursuant to this Court's pro

bono plan.  Often, after such appointments, counsel seek leave from the Court to file amended pleadings.  Should that not be the case here, these defense motions could be renewed.  If an amended complaint is filed, defendants are free to assert pre-answer motions should they so chose.

## <u>Conclusion</u>

For the foregoing reasons Plaintiff's application for appointment of pro bono counsel is granted.  Defendants Probation Association of New Jersey, George P. Christie and Peter Tortoreto's motion to dismiss with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) is DENIED, without prejudice.


<pre>
                              /s/    John W. Bissell
                                     JOHN W. BISSELL
                                      Chief Judge
                              United States District Court
</pre>


DATED:  August 24, 2005